UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:17-cr-263-MOC-DCK-1

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| vs. ) | |
| ) | **ORDER** |
| CLARENCE ROBERT BROWN, JR., ) | |
| ) | |
| Defendant. ) | |
| ) | |

**THIS MATTER** is before the Court on Defendant's pro se Motion for Compassionate Release/Reduction of Sentence. (Doc. No. 27). Defendant is currently serving a 120-month sentence at Lompoc Federal Correctional Institution (FCI) for Possession of Child Pornography. (Doc. No. 18). Defendant seeks early release from prison under 18 U.S.C. § 3582(c)(1)(A) due to his medical conditions and the risk of contracting COVID-19. The Government has responded in opposition to the motion.

**I.     BACKGROUND**

On August 15, 2016, a United States probation officer made an unannounced visit to Defendant's home in Charlotte, North Carolina. (Doc. No. 14, p. 3). Defendant was on supervised release at the time because of his 2005 convictions for Transportation and Possession of Child Pornography. (Id.). The probation officer noticed a computer keyboard and monitor in his living room. (Id.). She saw that the computer tower was hidden under a sheet next to his couch and that multiple thumb drives and a USB adapter were connected to the tower. (Id.). Defendant was not allowed to have the computer, internet hub, or anything that could access the internet without the probation office's approval, so the probation officer collected the computer

-1-

and other items for examination. (Id.).

Defendant gave the probation officer a written statement saying that he bought the wireless internet adapter for his computer so he could access the internet at home. (Id.). He also said that he had bought it in the spring and knew he could not have the internet. (Id.). He said that he had searched for naked celebrities and for pornography involving teenage girls. (Id.).

A Federal Bureau of Investigation (FBI) agent obtained a federal search warrant for the computer tower, which was examined by an FBI forensic examiner. (Id. at 4). The examiner found approximately 11 videos depicting child pornography on the computer, including videos of females under 12 years of age being vaginally and anally penetrated by an adult. (Id.).

Defendant was charged by Bill of Information on September 11, 2017, with one count of Possession of Child Pornography. (Id. at 3). On September 25, 2017, he pleaded guilty pursuant to a plea agreement in which the government agreed not to object to Defendant's sentence for violating his supervised release running concurrent to his sentence in this case. (Id. at 13). On February 26, 2018, Defendant was sentenced to 120 months of imprisonment, to run concurrent to his four-month revocation sentence in 3:04-cr-243. (Doc. No. 19).

Defendant is serving his sentence at Lompoc FCI, with an anticipated release date of June 6, 2025. He has served approximately 59 months of his sentence. He filed his Motion for Compassionate Release with this Court on October 4, 2021.[1] (Doc. No. 27). In the Motion, he states that he has been vaccinated against COVID-19 but is terrified of contracting the virus

---

[1] Defendant asserts that he has exhausted his administrative remedies by making a request to the warden but has not received a reply. (Doc. No. 27). He also asserts that he has been considered for home confinement by the Bureau of Prisons (BOP) twice in the last 14 months and was denied both times. (Id.).

again because he suffers from many comorbidities. (Id.). He lists his conditions as cirrhosis of the liver, recovering from hepatitis-C, hypertension, edema, hyperlipidemia, impaired fasting glucose, chronic kidney disease, his left kidney was removed due to cancer, osteoarthritis, scoliosis, chronic aggressive periodontitis, thrombocytopenia, GERD, erosive gastritis, and Barrett's esophagitis. (Id.).

He also states that he is a former smoker with a history of asthma, acute sinusitis, and bronchitis. (Id.). He alleges that he has not been appropriately cared for at his institution. He argues that he deserves compassionate release because he is not a danger to society and because of his medical issues, age, release plan, and because nearly all the inmates in his facility have had COVID-19 and the staff has been highly negligent in handling the situation. (Id.). He has been fully vaccinated against COVID-19. He received doses of the Moderna vaccine on March 2, 2021 and March 30, 2021. (Gov't Ex. 1).

Lompoc FCI houses 751 inmates. At present, no inmates are reported positive and are isolated while they are treated and recover. There are also 542 current inmates who previously tested positive and have recovered. There have been three COVID-related deaths at this institution. At Lompoc FCI where Defendant is held, BOP has fully vaccinated 269 staff members and 1,623 inmates.

## II. DISCUSSION

By its terms, 18 U.S.C. § 3582(c)(1)(A) permits the Court to reduce the defendant's term of imprisonment "after considering the factors set forth in [18 U.S.C. § 3553(a)]" if the Court finds, as relevant here, that (i) "extraordinary and compelling reasons warrant such a reduction" and (ii) "such a reduction is consistent with applicable policy statements issued by the

-3-

Sentencing Commission." § 3582(c)(1)(A)(i). As the movant, the defendant bears the burden to establish that he or she is eligible for a sentence reduction. United States v. Jones, 836 F.3d 896, 899 (8th Cir. 2016); United States v. Green, 764 F.3d 1352, 1356 (11th Cir. 2014).

The Sentencing Commission has issued a non-binding policy statement addressing motions for reduction of sentences under § 3582(c)(1)(A).[2] As relevant here, the non-binding policy statement provides that a court may reduce the term of imprisonment after considering the § 3553(a) factors if the Court finds that (i) "extraordinary and compelling reasons warrant the reduction"; (ii) "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)"; and (iii) "the reduction is consistent with this policy statement." U.S.S.G. § 1B1.13.

The policy statement includes an application note specifying the types of medical conditions that qualify as "extraordinary and compelling reasons." First, that standard is met if the defendant is "suffering from a terminal illness," such as "metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, [or] advanced dementia." U.S.S.G.

---

[2] In a recent decision, the Fourth Circuit determined that the policy statement is no longer binding on courts deciding compassionate release motions because U.S.S.G. § 1B1.13 was enacted before the First Step Act. United States v. McCoy, 981 F.3d 271 (4th Cir. 2020). Specifically, the Fourth Circuit held that the policy statement found in U.S.S.G. § 1B1.13 does not apply to compassionate release motions brought by inmates under 18 U.S.C. § 3582(c)(1)(A)(i). Id. at 281–83. The McCoy Court reasoned that, because Section 1B1.13 applies only to motions brought by the Bureau of Prisons, it cannot be the policy statement applicable in circumstances where defendants bring their own motions for compassionate release. Id. In place of the no-longer-applicable policy statement, McCoy permits "courts [to] make their own independent determinations of what constitutes an 'extraordinary and compelling reason[ ]' under § 3582(c)(1)(A), as consistent with the statutory language[.]" Id. at 284. The McCoy Court noted, however, that Section 1B1.13 "remains helpful guidance even when motions are filed by defendants." Id. at 282 n.7. Because this Court finds that the policy statement is extremely helpful in assessing motions for compassionate release brought by defendants, the Court will rely on it as guidance.

§ 1B1.13, cmt. n.1(A)(i). Second, the standard is met if the defendant is: (I) suffering from a serious physical or medical condition, (II) suffering from a serious functional or cognitive impairment, or (III) experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover. U.S.S.G. § 1B1.13, cmt. n.1(A)(ii). The application note also sets out other conditions and characteristics that qualify as "extraordinary and compelling reasons" related to the defendant's age and family circumstances. U.S.S.G. § 1B1.13, cmt. n.1(B)-(C).

Finally, in addition to the non-binding policy statement, the Fourth Circuit has recently clarified that courts may make their own independent determinations as to what constitute "extraordinary and compelling reasons" to warrant a reduction of sentence under Section 3582(c)(1)(A). United States v. McCoy, 981 F.3d 271 (4th Cir. 2020).

The mere existence of the COVID-19 pandemic, which poses a general threat to every non-immune person in the country, cannot alone provide a basis for a sentence reduction. The conditions described in U.S.S.G. § 1B1.13 encompass specific serious medical conditions afflicting an individual inmate, not generalized threats to the entire population. As the Third Circuit has held, "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release." United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020).

That does not mean, however, that COVID-19 is irrelevant to a court's analysis of a motion under Section 3582(c)(1)(A). If an inmate has a chronic medical condition that has been identified by the CDC as elevating the inmate's risk of becoming seriously ill from COVID-19,

-5-

that condition may satisfy the standard of "extraordinary and compelling reasons." Under these circumstances, a chronic condition (i.e., one "from which [the defendant] is not expected to recover") reasonably may be found to be "serious" and to "substantially diminish[] the ability of the defendant to provide self-care within the environment of a correctional facility," even if that condition would not have constituted an "extraordinary and compelling reason" absent the risk of COVID-19. U.S.S.G. § 1B1.13, cmt. n.1(A)(ii)(I).

Defendant's request for a sentence reduction will be denied because he has failed to show extraordinary and compelling circumstances warranting his early release from prison. Defendant is 65 years old and presents the COVID-19 risk factors of kidney disease, cirrhosis, and the potential risk factor of hypertension. (Gov't Ex. 1). Regardless, he no longer presents an "extraordinary and compelling reason" because he has been fully vaccinated against COVID-19. In March of 2021, BOP administered to Defendant both doses of the COVID-19 vaccine produced by Moderna. (Gov't Ex. 1). See United States v. Reed, 2021 WL 2681498, at *4 (E.D. Pa. June 30, 2021) ("Now that COVID-19 vaccinations are being administered throughout the Bureau of Prisons, compassionate release motions [based on COVID19] generally lack merit.").

Moreover, Defendant has not offered any example of how he cannot provide self-care in his institution. Additionally, he suffered from many of his current medical ailments at the time that this Court sentenced him to ten years in prison. His Presentence Report notes that he reported before sentencing that he had bleeding ulcers resulting in acid reflux, took medication for high blood pressure, and was treated for osteoarthritis and kidney cancer during his previous sentence in federal prison, during which time his kidney was removed. (Gov't Ex. 1).

Defendant is receiving attentive care at his institution where his conditions are well

-6-

Case 3:17-cr-00263-MOC-DCK   Document 36   Filed 11/29/21   Page 6 of 10

controlled by medication and monitored by medical staff. He takes medicine for hypertension, edema, osteoarthrosis, and esophageal reflux. (Id.). His kidney function is monitored by labs, and the medical staff have ordered weekly blood pressure monitoring when needed. (Id.). He was hospitalized for a few days in December of 2020 to treat gastrointestinal bleeding, during which he had an endoscopy and biopsy to analyze his condition. (Id.). He was monitored by medical staff at his facility when he returned. (Id.). He saw a dentist in January of 2021 and had knee x-rays taken for his arthritis in May of 2021, along with a scoliosis exam. (Id.). He even had an orthopedic surgery consultation in August of this year. (Id.). Additionally, the medical staff have ordered consults for gastroenterology, hematology, and nephrology. (Id.). He has been counseled about infection prevention and hand and respiratory hygiene by a doctor at his facility. (Id.). In short, Defendant has received appropriate and attentive care while in BOP's custody and will continue to do so.

Nor does Defendant's age present an extraordinary and compelling reason because he does not meet all three factors for his age to qualify. Although he is now 65 years old, he has served significantly less than 75 percent of his term of imprisonment or ten years: he has only served 59 months, or approximately half, of his sentence. Moreover, as previously discussed, he has not shown that he has experienced a serious deterioration in physical or mental health because of the aging process. Although he faces chronic health issues, he has not met his burden to show that his condition is so debilitating as to warrant a reduction in his sentence. Because Defendant has not established an extraordinary and compelling reason warranting a sentence reduction, he is not entitled to compassionate release under § 3582(c)(1)(A).

Even if Defendant presented an extraordinary and compelling reason, relief would still be

denied. This Court must consider all pertinent circumstances, including the § 3553(a) factors and possible danger to the community. These considerations—including Defendant's risk of danger to the community and BOP's strenuous efforts to protect inmates against the spread of COVID-19—counsel strongly against relief.

Here, Defendant was caught possessing child pornography involving very young minors and depicting sadistic or masochistic conduct or violence. (See Doc. No. 14). He admitted that he had been seeking out pornography involving teenage girls. He was so bold as to commit this crime while under the Court's supervision for essentially the same thing: child pornography offenses. He even admitted that he knew he was not allowed to have internet access but bought a wireless internet adapter for his computer anyway. He told a probation officer that he bought the adapter in the spring and was caught in August, evidencing that he was accessing the internet for months before probation discovered this. He tried to deceive probation by hiding his computer tower under a sheet next to his couch along with multiple thumb drives. (Id.). The Court agrees with the Government that this deceptive and disturbing conduct demand that he serve his full ten-year sentence.

Moreover, Defendant's history and characteristics show that he is a recidivist. In 2005, he was convicted of transporting and possessing child pornography in this district and was released from custody for that offense in 2010. (Id. at 7). His conduct in that case involved his transmission over the internet of images of girls between 10 to 13 years old and boys between the ages of 10 and 14 engaging in sexual activities. (Id.). His residence was searched in 2004 and he was found to possess images and videos of children engaging in sexual activity with other children, adults, and objects protruding from their genital area. (Id.). His files included images of

adult males engaging in sexual activity with infants and images of children being victimized in a sadomasochistic manner. (Id.). Defendant even had his collection organized into folders and estimated that he had collected approximately 1,000 images of child pornography. (Id.). Law enforcement found over 3,000 files depicting child pornography of 531 known victims in his possession. (Id. at 8). He admitted to collecting, trading, and posting child pornography files in Yahoo Groups on the internet. (Id.).

Defendant has shown a blatant disregard for not only the law, but also the rules of supervised release. He repeated his illegal conduct while under supervision and was only caught because of a surprise visit by probation at a time when he left his computer keyboard visible. His history of revictimizing children abused in a sadomasochistic manner by possessing and sharing images of their abuse, as well as doing so while under supervision of this Court, make clear that a reduction in sentence is not warranted.

In sum, Defendant presents a significant danger to the community. He has shown a pattern of committing crimes against children and that he is not deterred by punishment or supervision for such an offense. In fact, he was found in possession of an unauthorized computer device on three separate occasions while being supervised by probation, after being told numerous times that that would be a violation of his supervision terms. (Id. at 9). He has proven that sex offender treatment does not work for him and he even acknowledged that he was in violation of his treatment while on supervision. (Id. at 8). Moreover, while incarcerated in federal prison the first time, he was disciplined for possessing an unauthorized item. (Id.). Because he continues to present a danger to the public and children, he is not entitled to early release.

Defendant fails to demonstrate how his release just 59 months into his 120-month

-9-

Case 3:17-cr-00263-MOC-DCK   Document 36   Filed 11/29/21   Page 9 of 10

sentence for a serious child exploitation crime is warranted by the § 3553(a) factors. He was already given the benefit of his sentence running concurrent to his supervised release violation sentence, as well as being sentenced to the lowest sentence possible for his repeat offense. This Court found that a ten-year sentence was sufficient but not greater than necessary to provide just punishment for the offense, promote respect for the law, protect the public from further crimes of Defendant, afford adequate deterrence to criminal conduct, as well as to avoid unwarranted sentencing disparities. (Doc. No. 19). This Court properly evaluated the Section 3553(a) factors and his circumstances, including many of the same medical conditions that he complains of today, when it sentenced him in 2018 and found that a 120-month sentence was appropriate.

In sum, for all these reasons, the Court denies Defendant's motion. This Court notes that, in light of United States v. McCoy, the Court has made its own independent determination as to what constitute "extraordinary and compelling reasons" to warrant a reduction of sentence under Section 3582(c)(1)(A). Defendant has simply not presented "extraordinary and compelling reasons" to warrant a reduction of sentence under Section 3582(c)(1)(A). Having thus considered defendant's motion and reviewed the pleadings, the Court enters the following Order.

## ORDER

**IT IS, THEREFORE, ORDERED** that Defendant's pro se Motion for Compassionate Release/Reduction of Sentence, (Doc. No. 27), is **DENIED**.

Signed: November 24, 2021

Max O. Cogburn Jr
United States District Judge